131 Cal.Rptr.2d 705 (2003)
106 Cal.App.4th 1444
The PEOPLE, Plaintiff and Respondent,
v.
Maximino NAVARRO, Defendant and Appellant.
No. B148711.
Court of Appeal, Second District, Division Seven.
March 17, 2003.
As Modified on Denial of Rehearing April 14, 2003.
Review Denied June 25, 2003.[**]
*706 David D. Carico, under appointment by the Court of Appeal, Monterey, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Lance E. Winters, Supervising Deputy Attorney General, G. Tracey Letteau and Lawrence M. Daniels, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
JOHNSON, J.
A jury convicted defendant Maximino Navarro of first degree murder with a "drive-by" special circumstance and found the enhancement allegations to be true. The trial court sentenced Navarro to life without possibility of parole plus 28 years to life. On appeal Navarro claims the trial court made prejudicial errors leading to his conviction and sentence. We affirm the judgment of conviction and modify the sentence to strike the firearm discharge enhancement and the parole revocation fine.

FACTS AND PROCEEDINGS BELOW
Navarro was charged with the first degree murder of Rodney Davis in a drive-by shooting. His first trial resulted in a hung jury.
At the second trial, the jury convicted Navarro on the following evidence. Two eyewitnesses testified Navarro, driving a burgundy colored Honda Accord, pulled up alongside Davis's truck and fired shots at Davis. Two other witnesses testified they saw Navarro driving his burgundy Honda in the vicinity of the shooting immediately before it occurred. Another witness testified he saw a burgundy Honda pull up to Davis's truck and heard three shots fired. This latter witness, Sebron Irby, was threatened by Navarro while they were both incarcerated in the county jail. Navarro told Irby "I fucked off your home boy" which Irby understood as a reference to Davis. Navarro's former girlfriend testified he drove a burgundy Honda. Finally, there was evidence Navarro and Davis belonged to rival gangs which were feuding at the time of the shooting.
The trial court sentenced Navarro to life without possibility of parole on the murder conviction with a "drive-by" special circumstance (Penal Code section 190.2, subdivision (a)(21)) and to a consecutive sentence *707 of 25 years to life because in the commission of the murder Navarro personally and intentionally discharged a firearm causing the death of a person other than an accomplice (Penal Code section 12022.53, subdivision (d).) To that sentence the court added a consecutive three year sentence under the "street gang" enhancement statute (Penal Code section 186.22, subdivision (b)(1)).

DISCUSSION

I.-V.[***]

VI. A DEFENDANT WHO HAS BEEN SENTENCED TO LIFE WITHOUT POSSIBILITY OF PAROLE UNDER THE "DRIVE-BY MURDER" SPECIAL CIRCUMSTANCE STATUTE IS NOT SUBJECT TO AN ADDITIONAL SENTENCE OF 25 YEARS TO LIFE UNDER THE "FIREARM DISCHARGE" ENHANCEMENT STATUTE.

The trial court sentenced Navarro to life without possibility of parole under Penal Code section 190.2, subdivision (a)(21)[55] which provides the sentence for first degree murder is death or life without parole if: "The murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." The court also imposed a consecutive sentence enhancement of 25 years to life under Penal Code section 12022.53, subdivision (d) which states: "Notwithstanding any other provision of law, any person who is convicted of [murder] and who in the commission of that felony intentionally and personally discharges a firearm and proximately causes great bodily injury . . . or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." Subdivision (j) of section 12022.53, however, provides in relevant part: "[T]he court shall impose punishment pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or a longer term of imprisonment." (Italics added.)
Under the plain language of the statute, the 25 years to life enhancement does not apply here because "another provision of law," section 190.2, subdivision (a)(21), "provides for a greater penalty or a longer term of imprisonment," life without possibility of parole.
The People concede the enhancement does not apply in the present case if the language of the statute is taken literally. But, the People argue, we should not read the statute literally because the result from doing so would be contrary to the legislative intent underlying section 12022.53. This intent was to "`impose substantially longer prison sentences . . . on felons who use firearms in the commission of their crimes. . . .'"[56] The People's argument is based on their faulty conclusion if the firearm discharge enhancement does not apply where another provision of law provides a "greater penalty" then the reverse must also be true. In every case where another provision of law provides for a "lesser penalty" only the firearm discharge enhancement could be imposed; the court could not impose the lesser penalty and the firearm discharge enhancement. We find no merit to this argument for the reasons set forth below.
Section 12022.53 was enacted as part of the so-called "10-20-Life" bill (Assem. Bill No. 4 (1997-1998 Reg. Sess.)). The statute imposes sentence enhancements *708 for firearm use in the case of certain felonies such as murder, kidnapping, robbery and rape.[57] The enhancements vary in length depending on how the firearm is employed in the crime. If the defendant personally uses the firearm the enhancement is 10 years. If the defendant personally discharges the firearm the enhancement is 20 years. If the defendant intentionally and personally discharges the firearm and proximately causes death or great bodily injury the enhancement is 25 years to life.[58]
The statute makes clear these enhancements are to be added to the base term for the crime. Each of the three enhancement provisions, subdivisions (b), (c) and (d), states in relevant part "[n]otwithstanding any other provision of law" the defendant "shall be punished by an additional and consecutive term of imprisonment in the state prison for . . . ." 10 years, 20 years or 25 years to life as applicable.[59] The People attempt to show a conflict exists between subdivisions (b), (c) and (d) on the one hand and subdivision (j) on the other based on the language of subdivision (j) which says "the court shall impose punishment pursuant to this section rather than imposing punishment authorized under any other provision of law[.]" The People read "rather than imposing . . ." to mean rather than imposing the base term for the underlying crime. In other words, because the 10 year enhancement under subdivision (b) is greater than the 6 year high term for first degree robbery[60] a defendant convicted of first degree robbery could only be sentenced to 10 years, not 16 years. Having identified this "conflict," the People resolve it by explaining the real purpose of subdivision (j) is to direct which punishment the trial court should use as the principal term in calculating the sentence. Thus, in the example above, the court should use the 10 year enhancement as the principal term and then add the 6 year base term for robbery to arrive at a sentence of 16 years. This reverse method of sentence calculation is not necessary in the present case, the People further explain, because here the sentence enhancement of 25 years to life is not greater than the base term of life without possibility of parole. Therefore, the sentence can be calculated in the normal manner by using the punishment for the underlying felony, life without possibility of parole, as the principal term and adding the enhancement, 25 years to life.
The People have invented a conflict which does not exist and a solution which is totally unnecessary in order to understand the relationship between the enhancement provisions of subdivisions (b), (c) and (d) and the exception contained in subdivision (j). If what the Legislature wanted to do was make sure the enhancements and the base terms for the specified crimes would be added together it did so clearly and unambiguously by providing with respect to each enhancement the defendant "shall be punished by an additional and consecutive term of imprisonment . . . ." There was no need to add a subdivision "directing" which punishment, the base term or the enhancement, to use as the principal term in calculating the sentence.[61] Six plus 10 and 10 plus 6 both add up to 16.
More importantly, if the Legislature had intended the 25 years to life enhancement be added to a sentence of life without possibility of parole the plain, unqualified language of subdivision (d) would have accomplished this result. Indeed, this is the way Navarro's sentence would have been *709 calculated if A.B. 4 had been enacted as originally introduced.[62] The language of subdivision (j) was inserted as an amendment to the original bill.[63] The only plausible reasons for this amendment were, first, to make sure the "notwithstanding any other provision of law" language in subdivisions (b)-(d) did not inadvertently supercede a law which would impose an even greater punishment on a defendant who happened to employ a firearm in committing one of the enumerated crimes[64] and, second, to avoid the risk of ridicule and loss of respect for the criminal justice system in imposing an off-the-wall sentence such as death plus life in prison.
We conclude therefore, subdivision (j) of section 12022.53 precluded the trial court from adding an enhancement of 25 years to life to a sentence of death or life without possibility of parole under section 190.2, subdivision (a)(21).
As a result of this holding we will remand the case to the trial court to impose the enhancement under former section 12022.5, subdivision (b)(1). Although the jury found the enhancement allegation true, the trial court did not impose this enhancement because it imposed instead the enhancement under section 12022.53, subdivision (d) which carried a greater penalty. With the latter enhancement stricken, the former enhancement must now be imposed.[65]

VII.[***]

DISPOSITION
The judgment of conviction is affirmed. The sentence is modified by striking the enhancement under section 12022.53 and the parole revocation fine. The cause is remanded to the trial court with directions to impose the enhancement under former Penal Code section 1220.5, subdivision (b)(1). In all other respects the sentence is affirmed.
We concur: PERLUSS, P.J., and MUNOZ (AURELIO), J.[]
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV, V and VII.
[**] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of Court - Rules 976 and 977).
[***] See footnote *, ante.
[55] Future statutory references are to the Penal Code.
[56] People v. Garcia (2002) 28 Cal.4th 1166, 1172, 124 Cal.Rptr.2d 464, 52 P.3d 648, citation omitted.
[57] Section 12022.53, subdivision (a).
[58] Section 12022.53, subdivisions (b)-(d).
[59] Section 12022.53, subdivisions (b)-(d).
[60] Section 213, subdivision (a)( 1 )(B).
[61] "The term `sentence enhancement' means an additional term of imprisonment in state prison added to the base term for the underlying offense." (§ 666.7.)
[62] Assembly Bill No. 4 (1997-1998 Reg. Sess.) Section 2 as introduced December 2, 1996.
[63] Assembly Bill No. 4 (1997-1998 Reg. Sess.) Section 2, as amended February 19, 1997. The subject language was first contained in subdivision (m) of section 12022.53.
[64] For example, the robber in the example above would receive a 16 year sentence under a combination of sections 213, subdivision (a)(1)(B) and 12022.53, subdivision (b) but if he had two prior "strikes" he could receive a sentence of 25 years to life. (Section 667, subdivision (e)(2)(A)(ii)).
[65] Following defendant's confiction the Legislature repealed the enhancement under section 12022.5, subdivision (b)(1) because it "recognize[d] that the conduct punished under that provision is now subject to greater punishment under subdivision (d) of section 12022.53 of the Penal Code." (Stats. 2002, ch. 126, § 12, subd. (b).) the Legislature stated this repeal "shall not be given any retroactive application, and shall not be coinstrued to benefit any person who committed a crime or received an enhancement or any other punishment while [section 12022.5, subdivision (b)(1) was] in effect." (Stats. 2002, ch. 126, § 12, subd. (d).)
[***] See footnote *, ante.
[] Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.